ANDREW ELLICOTT *vs.* THE UNITED STATES INSURANCE COMPANY.—*December*, 1836.

In an action of *debt* by the appellant against the appellee, on a policy of insurance issued by the latter, guaranteeing to the bearer on a day named, the sum of $5,000 on presenting the same at the office of the company; it was *held* on special demurrer to the declaration, in which the plaintiff averred that he was the bearer of the policy, and that the same was presented on the day named, but was not paid, that the action might be maintained.

That such an instrument was as much the representative of money as exchequer bills, bank notes, bills of exchange, or promissory notes, payable to bearer, or endorsed in blank, and as such passed by delivery. That possession was *prima facie* evidence of title, and when sued on by the holder, it need not be averred, that the defendant made the policy with the plaintiff; or with whom it was made, or by whom the securities were deposited, and premium paid; or that the plaintiff was the bearer at the time it was made, or when he became such bearer; or that he was the bearer thereof on the day it fell due, and presented it for payment at the office of the defendant.

APPEAL from *Baltimore* county court.

This was an action of debt, commenced on the 1st May, 1834, by the appellant against the appellee.

The plaintiff below declared, that whereas the said defendants on the 24th day of December, 1833, at, &c. by their certain writing obligatory, sealed with their seal, and to the court now here shown, the date whereof is the day and year aforesaid, in consideration of securities deposited, and of the premium paid thereon, guaranteed to the bearer of such writ-

ing obligatory, the payment of the sum of $5,000 on the 30th day of April, 1834, on presenting such writing obligatory for payment, at the office of defendants; and the said plaintiff avers, that he was the bearer of the said policy, and that the same was presented for payment on the day and year last aforesaid, but was not paid; whereby an action hath accrued to said plaintiff to demand and have of the said defendants the sum of $5,000 above demanded.

*2nd count*—and whereas also afterwards, to wit: on, &c. at, &c. the said defendants were indebted to the said plaintiff in the sum of $5,000, for so much money had and received by the said defendants to the plaintiff's use, and to be paid to the said plaintiff when the said defendants should be thereto afterwards requested; whereby and by reason of the said last mentioned sum of money being, &c. remaining wholly unpaid, an action hath accrued to the said *Andrew* to demand and have of the said defendants the sum of $5,000, above demanded, yet the said defendant, although often requested, hath not paid the said sum of money or any part thereof, but to pay the same hath hitherto altogether refused, and still refuse to the damage of said plaintiff, &c.

To the *first* count of this declaration the company demurred specially, and assigned for causes of demurrer:

1st. That it is not averred thereon, that the defendant made the writing obligatory with the plaintiff, nor is it averred with whom the said writing obligatory was made.

2d. That it is not averred who deposited the securities, and paid the premium mentioned in said writing obligatory.

3d. That it is not averred that the plaintiff was the bearer of the said writing obligatory, at the time it was made, nor is it averred at what time and how, the plaintiff became the bearer thereof.

4th. That it is not averred that said plaintiff was the bearer of said writing obligatory on the day it fell due, nor that the plaintiff presented it for payment.

5th. That it is not averred that said writing obligatory was presented for payment at the office of said defendant.

To the *second* count, that the defendant pleaded *nil debet.* Issues were joined on the demurrer and plea.

The county court (*Archer, C. J. Magruder and Purviance, Judges,*) rendered judgment on the demurrer for the defendant, and the plaintiff took this appeal.

The cause was argued before BUCHANAN, Ch. J. and STEPHEN, DORSEY and CHAMBERS, Judges.

R. JOHNSON, for the appellant.

The only question in the case is, whether the holder of a policy of insurance under seal issued by the appellees payable to the bearer, may not sue on it, though he be not the party to whom it was in the first instance issued. It is contended on the part of the appellant, that the instrument in question, though under seal, may be sued on by any bearer in his own name. Act of 1831, ch. 191. *Woolcey vs. Pole, et al,* 6 *Serg. and Low,* 324. *Ib.* 218.

No counsel appeared for appellee.

DORSEY, Judge, delivered the opinion of the court.

We cannot concur with the county court in sustaining the demurrer to the first count in the declaration. The instrument of writing or policy declared on, was as much the representative of money as exchequer bills, bank notes, bills of exchange, or promissory notes, payable to bearer, or endorsed in blank and as such passed by delivery. The possession of it is *prima facie* evidence of title, and when sued on by the holder it need not be averred, that the defendant made the policy with the plaintiff; or with whom it was made; or by whom the securities were deposited, and premium paid; or that the plaintiff was the bearer at the time it was made; or when he became such bearer; or that he was the bearer thereof on the day it fell due and presented it for payment at the office of the defendant. 6 *Eng. Com. Law Rep.* 323. *Woolcey vs. Pole and others.* 11 *Eng. Com. Law Rep.* 16. *Georgier vs. Mieville and others.* 16 *Eng. Com.*

*Law Rep.* 217. *Same vs. Same, and* 1 *Gill and John.* 175. *Bowie, use of Ladd, et al vs. Duvall.*

The sixth section of the act of 1831, ch. 191, (by) which *The United States Insurance Company* was incorporated, enacts " that the president and directors shall have full power and authority, to make insurances against all loss and damage from fire, flood, or other casualty, and against all loss or damage, from any cause, hazard, or liability whatsoever on, and relating to factories, mills, bridges, and other works and buildings, and on goods, wares, merchandize, *choses in action,* and personal property of every description ; and generally, to make, execute and perfect all such contracts, agreements and other instruments, as may be necessary to carry into effect the provisions of this law." Under the broad and comprehensive powers thus given, we think the appellee was competent to execute such a policy as is the basis of this action ; and that in many cases, strong and satisfactory reasons exist, why it should assume this, and no other form. As for example, a merchant holds a trader's promissory note, of whose ability to meet his engagements he entertains some doubt. To secure himself against such casualty or hazard, he applies to *The United States Insurance Company* for their guaranty, and pays the required premium. The form of the instrument, the mode in which the guaranty is to be effected under the act of Assembly, is entirely dependent on the will of the parties ; the law adopts it as they shall design to have made it. They might it is true, have put their contracts as nearly as the subject matter would permit in the form of a marine policy, or insurance against fire, but they were under no legal obligation to do so, and certainly, no motive of interest or expediency could have prompted them to such a course of proceeding. It is the interest and policy of merchants to keep their capital or its representative in such a condition as to be at all times convertible into money with as great facility as practicable, and to avoid every thing that might tend to shake or impair the commercial credit of each other. Had a formal policy with the note attached to it been executed,

specifying the premium paid, &c. and the insured had afterwards thrown it into the market for conversion into money, its natural tendency would have been to impair the commercial credit of the maker of the note, and consequently lessen the probability of its being paid by him at maturity. The insurer therefore under such an arrangement would naturally demand a higher premium for insurance.

The insured it must be presumed, would not have applied for a guaranty from any source, but one, in which both he and the public reposed entire confidence. He could therefore feel no hesitation in surrendering the note to the company, by whom the risk was assumed, and in doing so he would put it in the power of the insurer upon any emergency rendering it expedient, to guard against loss by passing off the note, or making any arrangements to secure its payment which circumstances might make advisable. The necessary result of such a negotiation, would be a reduction of the premium demanded by the underwriter. In such a transaction then, it is manifestly the interest of both insurers and insured, to give to their contract the shape it has assumed in the case before us.

Dissenting from the opinion of the county court we reverse their judgment.

JUDGMENT REVERSED WITH PROCEDENDO.